FEDERAL LABOR RELATIONS AUTHORITY, Petitioner,

v.

U.S. DEPARTMENT OF the NAVY, NAVAL COMMUNICATIONS UNIT CUTLER, EAST MACHIAS, MAINE, Respondent.

American Federation of Government Employees, Intervenor.

FEDERAL LABOR RELATIONS AUTHORITY, Petitioner,

v.

U.S. DEPARTMENT OF the NAVY, PORTSMOUTH NAVAL SHIPYARD, PORTSMOUTH, NEW HAMPSHIRE, Respondent.

American Federation of Government Employees, Intervenor.

U.S. DEPARTMENT OF the NAVY, PORTSMOUTH NAVAL SHIPYARD, PORTSMOUTH, NEW HAMPSHIRE, Petitioner,

v.

FEDERAL LABOR RELATIONS AUTHORITY, Respondent.

American Federation of Government Employees, Intervenor.

U.S. DEPARTMENT OF the NAVY, NAVAL COMMUNICATIONS UNIT CUTLER, EAST MACHIAS, MAINE, Petitioner,

v.

FEDERAL LABOR RELATIONS AUTHORITY, Respondent.

American Federation of Government Employees, Intervenor.

Nos. 90–1948, 90–1949, 90–2014, 90–2015.

United States Court of Appeals, First Circuit.

Heard March 7, 1991.

Decided Aug. 13, 1991.

Sandra Wien Simon, Appellate Staff, Civil Div., Dept. of Justice, with whom Stuart M. Gerson, Asst. Atty. Gen., and Leonard M. Schaitman, Appellate Staff, Civil Div., Dept. of Justice, were on brief, Washington, D.C., for the U.S. Dept. of Navy.

William E. Persina, Sol., with whom William R. Tobey, Deputy Sol., and Pamela P. Johnson were on brief, Washington, D.C., for the Federal Labor Relations Authority.

Stuart A. Kirsch, Asst. Gen. Counsel–Litigation, with whom Mark D. Roth, Gen. Counsel, was on brief, Washington, D.C., for intervenor.

Gregory O'Duden, Director of Litigation, and Elaine Kaplan, Deputy Director of Litigation, on brief, Washington, D.C., for the Nat. Treasury Employees Union, amicus curiae.

Before CAMPBELL, Circuit Judge, BOWNES, Senior Circuit Judge, and CYR, Circuit Judge.

LEVIN H. CAMPBELL, Circuit Judge.

In these two cases, consolidated for review in this court, the International Federation of Professional and Technical Engineers, Local 4, filed unfair labor practice charges against the Department of the Navy, Portsmouth Naval Shipyard, while the Maine and American Federation of Government Employees, Local 2635, filed similar charges against the Department of the Navy, Naval Communications Unit Cutler.[1] Both unions' charges were based on the Navy's refusal to comply with the unions' requests that the Navy disclose the home addresses[2] of federal employees in

---

1. Briefs have also been filed by the American Federation of Government Employees, AFL–CIO, ("AFGE") as intervenor, and the National Treasury Employees Union as *amicus curiae,* both on behalf of the petitioner, the Federal Labor Relations Authority ("FLRA").

2. The Navy points out that in the *Naval Communications Center* case the union requested the names and addresses of all fire fighters in the bargaining unit represented by the union, and that the names of these fire fighters were released. In the *Portsmouth* case, the union only

requested disclosure of home addresses, having already been provided with the employees' names in an "eligibility roster" provided to the union by the Naval Shipyard on a biannual basis. Thus, the Navy contends that while the opinions of the FLRA and administrative law judges in these cases deal with the disclosure of names and addresses, it is only the disclosure of addresses corresponding to each name that is at issue here.

In both cases the Navy admitted in its answers the allegations in the unions' complaints that the agency refused to provide "names and

their bargaining units. In the *Portsmouth* case,[3] the Federal Labor Relations Authority ("FLRA") held that under Title VII of the Civil Service Reform Act of 1978, (also known as the Federal Service Labor–Management Relations Statute, hereinafter "Labor Statute"), 5 U.S.C. § 7101, *et seq.,* federal agencies were required, upon request, to disclose the names and home addresses of bargaining unit employees to unions, without consideration of whether alternative ways for the union to communicate with the employees were adequate. In the *Portsmouth* opinion, the FLRA held that, since the "requested information is fundamentally relevant to the Union's role as bargaining agent," a case-by-case determination of necessity and consideration of the adequacy of alternatives was not required.[4] Accordingly, the FLRA in *Portsmouth* ordered the Navy to release the requested address information to the union. The FLRA applied the *Portsmouth* decision, without further elaboration, to the *Naval Communications Unit* case and again ordered disclosure.[5] In this court, the FLRA petitions for enforcement in both cases, and the Navy cross-petitions for review of the FLRA's decisions and orders. The Navy argues that names and associated addresses need not be disclosed without a showing of the inadequacy of alternatives, although it concedes that the information may have to be released if alterna-

tive means of reaching the employees are shown to be inadequate.

## I.

■ The Labor Statute, 5 U.S.C. § 7114(b), provides:

(b) The duty of an agency and an exclusive representative to negotiate in good faith under subsection (a) of this section shall include the obligation—

. . . . .

(4) in the case of an agency, to furnish to the exclusive representative involved, or its authorized representative, upon request and, to the extent not prohibited by law, data—

. . . . .

(B) which is reasonably available and necessary for full and proper discussion, understanding, and negotiation of subjects within the scope of collective bargaining; . . . .

For disclosure to be required under the Labor Statute, therefore, the information (in this case the employees' addresses), must be both: (1) "necessary for full and proper discussion, understanding, and negotiation of subjects within the scope of collective bargaining"; and (2) "not prohibited by law." [6]

The Navy asserts that disclosure of the employees' addresses is not "necessary" within the meaning of § 7114(b)(4)(B), ab-

home addresses" of the employees. Yet, the FLRA does not dispute the Navy's contention that only the disclosure of home addresses linked to names is at stake. In fact, the FLRA's statement of the issue in its brief before us speaks only of home addresses. For present purposes, therefore, we shall assume that the names of the relevant employees have been freely disclosed to the unions.

3. *United States Department of the Navy, Portsmouth Naval Shipyard, Portsmouth, New Hampshire and International Federation of Professional and Technical Engineers, Local 4,* 37 FLRA (No. 39) 515 (September 26, 1990).

4. However, the FLRA in *Portsmouth* approvingly noted that in its earlier case first establishing a presumptive rule of necessity, *Farmers Home Administration Finance Office,* it had "held that an employer agency's withholding of employee

names and addresses could properly be based on a showing of 'imminent danger' to an employee if that data were released." *Portsmouth,* 37 FLRA at 520 (citing *Farmers Home Administration Finance Office,* 23 FLRA 788, 798 (1986), *aff'd in substantial part and remanded sub nom., Department of Agriculture v. FLRA,* 836 F.2d 1139 (8th Cir.1988), *vacated on other grounds and remanded,* 488 U.S. 1025, 109 S.Ct. 831, 102 L.Ed.2d 964 (1989), *dismissed as moot,* 876 F.2d 50 (1989)).

5. *United States Department of the Navy, Naval Communications Unit Cutler, East Machias, Maine and American Federal of Government Employees, Local 2635,* 37 FLRA (No. 40) 550 (September 26, 1990).

6. The Navy admitted the allegations in the unions' complaints and does not otherwise dispute that the information sought is reasonably available data.

sent a showing that alternative means of communication are inadequate. In addition, the Navy argues that disclosure is, in any event, precluded by the Privacy Act, 5 U.S.C. § 552a, which prohibits disclosure of personal information about federal employees without their consent.[7] There is no dispute but that the employees' addresses sought here fall within the general Privacy Act protection of § 552a(b). The FLRA determined, however, that two exceptions to the Privacy Act allow disclosure. The Navy argues that neither exception is applicable.

The first Privacy Act exception at issue permits disclosure of an agency record where required under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"). The FOIA, in turn, establishes "a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language." *Air Force v. Rose*, 425 U.S. 352, 360–61, 96 S.Ct. 1592, 1599, 48 L.Ed.2d 11 (1976) (quoting S.Rep. No. 813, 89th Cong., 1st Sess. 3 (1965)); *see* 5 U.S.C. § 552. Subsection 552(b)(6) ("exemption 6") of the FOIA exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." The applicability of the Privacy Act FOIA exception here thus turns on the applicability of exemption 6. The Supreme Court has explained how courts are, in general, to apply exemption 6:

> Congressional concern for the protection of the kind of confidential personal data

usually included in a personnel file is abundantly clear. But Congress also made clear that nonconfidential matter was not to be insulated from disclosure merely because it was stored by an agency in its 'personnel' files. Rather, Congress sought to construct an exemption that would require a balancing of the individual's right of privacy against the preservation of the basic purpose of the [FOIA] 'to open agency action to the light of public scrutiny.' The device adopted to achieve that balance was the limited exemption, where privacy was threatened, for 'clearly unwarranted' invasions of personal privacy.

*Department of the Air Force v. Rose*, 425 U.S. at 372, 96 S.Ct. at 1604.

The second claimed Privacy Act exception allows disclosure for a "routine use." Under this exception, disclosure must be "compatible with the purpose for which [the information] was collected," and be in accordance with a routine use notice published by the agency in the Federal Register, which describes the routine use, the categories of users, and the purpose of such use. *See supra* note 7. The applicability of this exception turns on the interpretation of a routine use notice published by the Office of Personnel Management ("OPM"), which maintains "Official Personnel Files" that contain federal employees' names and home addresses. That routine use notice specifies in "paragraph j" that the information may be used:

---

7. The Privacy Act scheme is set out as follows in 5 U.S.C. § 552a(b):

> (b) **Conditions of disclosure.—**
> No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, unless disclosure of the record would be—
>
> .    .    .    .    .
>
> (2) required under section 552 of this title [the Freedom of Information Act, or "FOIA"];
> (3) for a routine use as defined in subsection (a)(7) of this section and described under subsection (e)(4)(D) of this section;
> . . . .

Subsection (a)(7) defines routine use to mean, "with respect to the disclosure of a record, the use of such record for a purpose which is compatible with the purpose for which it was collected." Subsection (e)(4)(D) provides:

> (e) **Agency requirements**
> Each agency that maintains a system of records shall—
>
> . . . .
>
> (4) . . . publish in the Federal Register upon establishment or revision a notice of the existence and character of the system of records, which notice shall include—
>
> .    .    .    .
>
> (D) each routine use of the records contained in the system, including the categories of users and the purpose of such use; . . . .

j. To disclose information to officials of labor organizations recognized under 5 U.S.C. Chapter 71 when relevant and necessary to their duties of exclusive representation concerning personnel policies, practices, and matters affecting working conditions.

*Privacy Act of 1974: Publication of Notices of Systems of Records and Proposed New Routine Use,* 49 Fed.Reg. 36,346, 36,-949 (Sept. 20, 1984).

## II.

Federal agencies' obligation to disclose, upon request, names and related home addresses of bargaining unit employees to the exclusive bargaining representative union has been the subject of much litigation. The FLRA first held that federal agencies were not required to disclose this information. *Farmers Home Administration Finance Office,* 19 FLRA (No. 21) 195 (1985) (*"Farmers Home I"*). The Second Circuit granted a petition for review of the FLRA's *"Farmers Home I"* position and held that, because the record supported the administrative law judge's finding that alternative means to reach employees were inadequate on the facts of that case, and because disclosure fell within the FOIA exception to the Privacy Act, the Labor Statute required the disclosure of employees' addresses. *AFGE, Local 1760, AFL–CIO v. FLRA,* 786 F.2d 554, 557 (2d Cir. 1986). Thereafter, the FLRA not only reversed its own anti-disclosure position, but laid down a presumptive rule of necessity requiring disclosure regardless of the adequacy of alternatives in a particular case. The FLRA ruled that both exceptions to the Privacy Act applied. *Farmers Home Administration Finance Office,* 23 FLRA 788 (1986), *supra* note 4, (*"Farmers Home II"*).

A number of courts of appeals have upheld orders of disclosure issued by the FLRA in keeping with its position in *Farmers Home II.* Upholding the FLRA's determination that disclosure of names and addresses was "necessary" within the Labor Statute, the Eighth and Fourth Circuits also endorsed the FLRA's rule that disclosure was presumptively necessary. *Department of Agriculture v. FLRA,* 836 F.2d 1139 (8th Cir.1988), *supra* note 4; *Department of Health and Human Services v. FLRA,* 833 F.2d 1129 (4th Cir.1987), *cert. denied,* 488 U.S. 880, 109 S.Ct. 632, 102 L.Ed.2d 170 (1988). The Third Circuit, in *Department of the Navy v. FLRA,* 840 F.2d 1131, *cert. denied,* 488 U.S. 881, 109 S.Ct. 632, 102 L.Ed.2d 170 (1988), did not go quite so far. While noting the FLRA's position that disclosure of names and addresses would be required without consideration of the adequacy of alternatives, the court of appeals based its decision on its conclusion that the FLRA's finding (presented at oral argument)—that on the facts of that case alternative means of communication were inadequate—was amply supported by the record. *Id.* at 1139.

All of these courts held that the information was not exempted from disclosure under the FOIA exemption 6, 5 U.S.C. § 552(b)(6). Disclosure was thus found to be permitted by the FOIA exception to the Privacy Act, 5 U.S.C. § 552a(b)(2), and was not "prohibited by law," under the Labor Statute, 5 U.S.C. § 7114(b), *supra.* (Consequently, none of these courts reached the question of whether the "routine use" exception to the Privacy Act applied.) Balancing the privacy interest in disclosure against the public interest in disclosure under exemption 6, these courts weighed Congress' explicit declaration in the Labor Statute, 5 U.S.C. § 7101(a),[8] that collective

---

**8.** Section 7101(a) states, in pertinent part:

(a) The Congress finds that—
    (1) experience in both private and public employment indicates that the statutory protection of the right of employees to organize, bargain collectively, and participate through labor organizations of their own choosing in decisions which affect them—

(A) safeguards the public interest,

. . . . .

(2) the public interest demands the highest standards of employee performance and the continued development and implementation of modern and progressive work practices to facilitate and improve employee performance and the efficient accomplishment of the operations of the Government.

bargaining is in the public interest, to tip the scales in favor of disclosure. The Eighth Circuit limited this holding, concluding that exemption 6 was not a bar to disclosure only for "those employees who do not request their employers to keep the information confidential." *Department of Agriculture,* 836 F.2d at 1144. In *Department of Air Force v. FLRA,* 838 F.2d 229, 233 *cert. dismissed,* 488 U.S. 880, 109 S.Ct. 632, 102 L.Ed.2d 170 (1988), the Seventh Circuit, also noting the legitimate public interest in collective bargaining that would be served by disclosure, concluded that disclosure would be required under the Freedom of Information Act directly, independent of the Labor Statute, so that denying disclosure under the Labor Statute would be pointless.

More recently, the D.C. Circuit has departed from this substantial case law supporting disclosure, *FLRA v. Department of the Treasury,* 884 F.2d 1446 (D.C.Cir. 1989), *cert. denied,* — U.S. —, 110 S.Ct. 863, 107 L.Ed.2d 947 (1990), basing its contrary holding on an intervening Supreme Court decision, *Department of Justice v. Reporters Committee for Freedom of the Press,* 489 U.S. 749, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989). The D.C. Circuit agreed with the Fourth and Eighth Circuits in upholding the FLRA's determination that disclosure of names and addresses was necessary without regard to alternative means of communication. *Treasury,* 884 F.2d at 1449–50. The court of appeals nevertheless, ruled that disclosure was otherwise prohibited by law under the Privacy Act, 5 U.S.C. § 552a(b). The court rejected its sister circuits' interpretation of the FOIA exception to the Privacy Act because of the Supreme Court's recent direction in *Reporters Committee* that the public interest recognizable in balancing against privacy interests under FOIA is limited to the public interest that the FOIA was enacted to serve in "ensur[ing] that the *Government's* activities be opened to the sharp eye of public scrutiny." *Treasury,* 884 F.2d at 1451 (quoting *Reporters Commit-*

tee, 109 S.Ct. at 1482). Because the public interest in collective bargaining and labor organization is unrelated to this FOIA purpose, the D.C. Circuit believed that the FOIA exemption 6 balance weighed against disclosure and that the FOIA exception to the Privacy Act did not apply. In addition, the D.C. Circuit deferred to OPM's interpretation of its own "paragraph j" routine use notice. OPM had concluded that disclosure of the names and addresses was not "necessary" absent a showing that alternative means of communication were inadequate. As no such showing was made in *Treasury,* the D.C. Circuit held that the "routine use" exception to the Privacy Act did not apply. *Treasury,* 884 F.2d at 1455–56. In spite of *Reporters Committee* and the D.C. Circuit's *Treasury* opinion, the FLRA continued to adhere to its *Farmers Home II* analysis in the cases now before this court.

We agree with the D.C. Circuit that, in light of *Reporters Committee,* disclosure of the addresses to the unions is prohibited by the Privacy Act, as it comes neither within the FOIA nor a "routine use" exception to the Act. Being prohibited by law, disclosure is thus foreclosed under the Labor Statute. We need not consider the validity of the FLRA's interpretation of the Labor Statute's other requirement that the disclosed data be "necessary for full and proper discussion, understanding, and negotiation of subjects within the scope of collective bargaining," 5 U.S.C. § 7114(b)(4)(B). Even assuming, *arguendo,* that disclosure is "necessary" under the Labor Statute, the same result obtains. We deny, therefore, the FLRA's applications for enforcement, and we grant the Navy's petitions for review.

### III.

*Standard of Review*

■ The FLRA's holding that disclosure of the employees' addresses is "not prohibited by law," under the Labor Statute, 5

---

Therefore, labor organizations and collective bargaining in the civil service are in the public interest.

U.S.C. § 7114(b)(4), requires interpretation of the Privacy Act, 5 U.S.C. § 552a(b), and the FOIA, 5 U.S.C. § 552. We agree with the D.C. Circuit that the FLRA is not entitled to deference in its interpretation of the Privacy Act and the FOIA, which are not within the FLRA's zone of expertise. *Treasury*, 884 F.2d at 1451; *accord Navy*, 840 F.2d at 1134 ("no deference is owed an agency's interpretation of a general statute.... In particular, the FLRA has no special competence in applying the provisions of the [FOIA] and the Privacy Act that are at issue here.").

The Fourth and Second Circuits have held, to the contrary, that deference is due the FLRA's interpretation of the Privacy Act and the FOIA, since the interpretation bears on "the 'complexities' of federal labor relations." *Health and Human Services*, 833 F.2d at 1135; *accord AFGE*, 786 F.2d at 556. These courts based their view on the Supreme Court's statement in *Bureau of Alcohol, Tobacco and Firearms v. FLRA*, 464 U.S. 89, 97, 104 S.Ct. 439, 444, 78 L.Ed.2d 195 (1983), that the FLRA "is entitled to considerable deference when it exercises its 'special function of applying the general provisions of the Act to the complexities' of federal labor relations." But *Bureau of Alcohol, Tobacco and Firearms* involved interpretation of § 7131(a) of the Labor Statute, which is within the FLRA's expertise, and did not involve interpretation of law outside this expertise.

Furthermore, the Supreme Court noted in *Reporters Committee* that "the FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'" 489 U.S. at 755, 109 S.Ct. at 1472 (quoting 5 U.S.C. § 552(a)(4)(B)). Deference to the FLRA in construing the FOIA when it arises in the context of the Labor Statute would be at odds with this allocation of

jurisdiction to resolve FOIA legal questions to the courts. *See also Hopkins v. Department of Housing and Urban Development*, 929 F.2d 81, 84 (2d Cir.1991) ("An agency's decision to withhold records requested under the FOIA is subject to *de novo* judicial review.") (citing 5 U.S.C. § 552(a)(4)(B)).

*The FOIA Exception to the Privacy Act*

The Privacy Act, which generally prohibits disclosure of personal records without the individual's written consent, does not apply to information which must be disclosed under the FOIA. 5 U.S.C. § 552a(b)(2). Exemption 6, § 552(b)(6), exempts from the general FOIA policy of full agency disclosure, "personnel files ... the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." In applying the exemption 6 balancing test of privacy against public interests at stake here, *see supra*, we acknowledge that "[b]y restricting the reach of exemption 6 to cases where the invasion of privacy caused by disclosure is not only unwarranted but *clearly* so, Congress has erected an imposing barrier to nondisclosure under this exemption." *Kurzon v. Department of Health & Human Services*, 649 F.2d 65, 67 (1st Cir.1981) (emphasis in original).

First, regarding the privacy interest, we are cognizant of the relatively modest privacy interest that this court in other cases has assigned to individuals' bare names and home addresses. *See Aronson v. Department of Housing and Urban Development*, 822 F.2d 182, 186 (1st Cir.1987) (citing *Kurzon v. Department of Health and Human Services*, 649 F.2d 65 (1st Cir. 1981)).[9] *See also* Judge Ginsburg's concurrence in *Treasury*, 884 F.2d at 1459–60. Yet, on the other side of the scales, we believe a discernable interest exists in the

---

**9.** In *Aronson*, we stated with respect to an individual's privacy interest in a bare home address: While we do not dismiss out of hand the privacy interest in one's address, we do not find it of crucial significance here. There is no showing in the record that the practice of keeping one's address out of reach of the postman is that of a majority or even of a significant percentage of the citizenry. We

have not hesitated in the past to allow disclosure of names and addresses when there has been a strong public interest in favor of disclosure and when a significant privacy interest other than the release of addresses was lacking.
*Aronson v. Department of Housing & Urban Development*, 822 F.2d 182, 186 (1st Cir.1987) (citations omitted).

ability to retreat to the seclusion of one's home and to avoid enforced disclosure of one's address. While of modest strength, this interest is nonetheless real enough to be worthy of recognition and protection in appropriate circumstances. Most courts have so held. A few only have found an individual's interest in his or her home address to be entirely negligible. *See Hopkins,* 929 F.2d at 87 ("individual private employees have a significant privacy interest in avoiding disclosure of their names and addresses"); *Treasury,* 884 F.2d at 1452 (privacy interest in names and home addresses "significant"); *Navy,* 840 F.2d at 1136 ("Unquestionably, individuals have some privacy in their home addresses."); *Air Force,* 838 F.2d at 232 (secrecy and seclusion components of privacy interest in home addresses "minuscule"); *Agriculture,* 836 F.2d at 1143 ("[E]mployees have a cognizable privacy interest in their home addresses."); *Department of Health & Human Services,* 833 F.2d at 1135 ("employees have 'a strong privacy interest' in their home addresses." (quoting *AFGE, Local 1923 v. Department of Health & Human Services,* 712 F.2d 931, 932 (4th Cir.1983))); *AFGE, Local 1760 v. FLRA,* 786 F.2d at 556–57 ("privacy interest of the average employee in his address is not particularly compelling.... modest privacy interest in revealing addresses alone"); *AFGE, Local 1923,* 712 F.2d at 934 (Winter, C.J., dissenting).[10]

Regarding the public interest in disclosure, we agree with the D.C. Circuit that the Supreme Court's opinion in *Reporters Committee* precludes consideration, on the side of disclosure in FOIA balancing, of the special public interest in collective bargaining. Those cases in which this value was relied upon are no longer apposite. *See Treasury,* 884 F.2d at 1451 (citing cases). In *Reporters Committee,* the Supreme Court considered disclosure of criminal "rap sheets" under FOIA exemption 7(C), which exempts from disclosure law enforcement records which "could reasonably be expected to constitute an unwarranted invasion of personal privacy." The Supreme Court noted in *Reporters Committee* that the privacy language is broader under exemption 7(C) than under exemption 6. 489 U.S. at 756, 109 S.Ct. at 1472. Nevertheless, apart from the degree of privacy protection, the Supreme Court clearly stated that the public interest in disclosure does not turn on the purposes for which the request was made or on the identity of the party requesting the information, but rather

> must turn on the nature of the requested document and its relationship to "the basic purpose of the Freedom of Information Act 'to open agency action to the light of public scrutiny.' " ... This basic policy of " 'full agency disclosure unless information is exempted under clearly delineated statutory language,' " indeed focuses on the citizens' right to be informed about "what their government is up to." Official information that sheds light on an agency's performance of its statutory duties falls squarely within that statutory purpose. That purpose, however, is not fostered by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct. In this case—and presumably in the typical case in which one private citizen is seeking information about another—the requester does not intend to discover anything about the conduct of the agency that has possession of the requested records.

489 U.S. at 772–73, 109 S.Ct. at 1481. Thus, the Supreme Court held that, whatever public interest there might be in an individual's "rap sheet," "that interest falls outside the ambit of the public interest that

---

**10.** Judge Winter, dissenting in *AFGE, Local 1923,* 712 F.2d at 934, particularly emphasized the minimal privacy interests at stake:

> With rare exception, there is little privacy in one's name and home address. Such information is a matter of public record in motor vehicle registration and licensing records, voting lists, and real property records. Other sources from which it may often be obtained are telephone directories and city directories. In short, it is the rare individual who has any real privacy interest in the identity of his residence.

the FOIA was enacted to serve," and exemption 7(C) therefore applied. *Id.* at 775, 109 S.Ct. at 1482.

Based on this controlling statement of law under the FOIA, the D.C. Circuit held that the labor context in which the requests for information arises is irrelevant to the exemption 6 balance. *Treasury,* 884 F.2d at 1453 ("Privacy Act exception b(2) speaks only of FOIA. We do not believe we are entitled to engage in the sort of imaginative reconstruction that would be necessary to introduce collective bargaining values into the balancing process."). We agree. Whatever non-zero privacy interest at stake, under *Reporters Committee,* that interest cannot be outweighed by a public interest in disclosure—whatever its weight or significance—that falls outside of the FOIA-cognizable public interest in permitting the people to know what their government is up to. *See Burge v. Eastburn,* 934 F.2d 577, 580 (5th Cir.1991); *Reed v. NLRB,* 927 F.2d 1249, 1252 (D.C.Cir.1991). We do not believe that, after *Reporters Committee,* balancing of public and privacy interests under the FOIA exemption 6 may be undertaken with reference to the policies of the Labor Statute.[11]

We are constrained then, by *Reporters Committee,* to balance the privacy and public interests at stake under the FOIA without regard to the identity and special purposes of the requester, and without regard to public interests other than the "core FOIA purpose" of opening agency operations to public scrutiny. We thus must disregard the public interest that the FLRA primarily suggests—namely, the public interest in labor organization and collective bargaining. The FLRA and AFGE (as intervenor) also contend, how-

ever, that access to government employees at their homes will advance the public interest FOIA was enacted to serve by tapping into a source of information about government operations. AFGE emphasizes that disclosure will facilitate union (or others') polling of employees regarding "whistleblower protections, safety and hazard reporting, disciplinary standards and other issues of vital interest to the integrity and honesty of government." Knowing "what the government is up to" regarding labor practices is a FOIA-cognizable public interest. *See* 5 U.S.C. § 7101(a)(2), *supra; see also Ray v. Department of Justice,* 908 F.2d 1549, 1555 (11th Cir.1990) (disclosure of information identifying deported Haitians would serve public interest in learning whether U.S. government is adequately monitoring Haiti's obligation not to persecute deportees, and in learning whether U.S. government is honest about Haiti's actions; court held public interest so stated outweighs privacy interest under FOIA exemption 6), *cert. granted,* — U.S. —, 111 S.Ct. 1101, 113 L.Ed.2d 212 (1991). The difficulty with this argument is that there has been no showing that release of home addresses is needed to make inquiries of this type. Particularly where, as here, the employers' names have already been disclosed, contact may easily be made at the workplace, or so it would seem. Any risk that the public employee will be less candid when contacted at work may be addressed by making mutually agreeable arrangements to meet or speak elsewhere.

Given the FOIA presumption in favor of disclosure and the narrow compass to be given FOIA exemptions, *Department of Justice v. Tax Analysts,* 492 U.S. 136, 109

11. The FLRA suggests that we read the "prohibited by law" language of the Labor Statute, § 7114(b), in light of the Labor Statute's policies, to allow a different FOIA exemption 6 calculus than would otherwise apply when information is directly requested under the FOIA. We decline, however, to alter clear principles of FOIA analysis by an imaginative reading of the Labor Statute's plain requirement that the disclosure not be "prohibited by law." In light of the Supreme Court's clear statement of FOIA principles in *Reporters Committee,* we do not think a distinction in the relevant "public inter-

est" may any longer be drawn where the information request was made under the Labor Statute rather than under the FOIA directly. *See Department of Health & Human Services,* 833 F.2d at 1135 (prior to *Reporters Committee,* Fourth Circuit deferred to FLRA weighing of collective bargaining interest in exemption 6 balance where request arose under Labor Statute; court distinguished its earlier refusal to require disclosure when request made directly under FOIA) (citing *AFGE, Local 1923,* 712 F.2d at 932).

S.Ct. 2841, 2851, 106 L.Ed.2d 112 (1989), we regard the FOIA exemption 6 balance here to be a close question. Nevertheless, we do not think the public interest in general FOIA disclosure of public employees' home addresses in order that the employees may be contacted at home regarding government operations outweighs those employees' privacy interest in retreating to their homes to be left undisturbed by unsolicited investigation regarding their public employment.[12] *See Treasury,* 884 F.2d at 1452–53; *see also Hopkins,* 929 F.2d at 88 ("[D]isclosure of information affecting privacy interests is permissible only if the information reveals something *directly* about the character of a government agency or official." (emphasis in original)) (citing *Reporters Committee,* 489 U.S. at 774, 109 S.Ct. at 1482). *Cf. Rowan v. Post Office Department,* 397 U.S. 728, 736–37, 90 S.Ct. 1484, 1490, 25 L.Ed.2d 736 (1969) ("[A] mailer's right to communicate must stop at the mailbox of an unreceptive addressee.... The ancient concept that 'a man's home is his castle' into which 'not even the king may enter' has lost none of its vitality."). Under exemption 6, applying the Supreme Court's analysis in *Reporters Committee,* we agree with the D.C. Circuit in *Treasury, supra,* that disclosure would be a "clearly unwarranted invasion of personal privacy."

*The "Routine Use" Exception to the Privacy Act*

■ The second exception to the Privacy Act, 5 U.S.C. § 552a(b)(3), permits disclosure of personnel records for a routine use, if, *first,* "compatible with the purpose for which the information was collected," and, *second,* if in accordance with a routine use notice published by the agency in the Federal Register, which describes the routine use, the categories of users, and the purpose of such use. *See supra,* note 7. The

Navy does not deny that disclosure of the employees' home addresses is compatible with the purpose for which the information was collected. Rather, the Navy contends that OPM's routine use notice for this information—which in "paragraph j" provides for disclosure of information to unions "when relevant and necessary to their duties," *see supra*—does not encompass disclosure to the unions in this case, where there has been no consideration and finding of the inadequacy of alternative means of communication.

The FLRA contends that the disclosure of employees' home addresses is presumptively "necessary" to labor organizations' duties of exclusive representation, within the meaning of paragraph j. The FLRA argues that subparagraph j should be interpreted consistent with the FLRA's interpretation of the Labor Statute, 5 U.S.C. § 7114(b)(4)(B)—that disclosure is presumptively "necessary" without consideration of alternative means of communication. The Navy urges that OPM's interpretation of its own regulation—that disclosure cannot be "necessary" absent a showing that alternative means of communication are inadequate—should be given great deference. OPM takes the position that disclosure may not be made without a case-by-case showing of the "necessity" of the information requested.

OPM took the position in an *amicus* brief to the FLRA dated July 14, 1986 (supporting agency employers' views before the FLRA regarding disclosure of home addresses), that disclosure is not "necessary" within the meaning of the Labor Statute if adequate alternative means exist to contact the employees, and advocated that paragraph j be construed similarly. Thereafter, in a letter to then Assistant Attorney General Richard Willard, OPM Director Con-

---

12. We agree with much of Judge Ginsburg's lucid concurrence in *Treasury,* 884 F.2d at 1457, suggesting discernable tensions between the Court's approach in *Reporters Committee* and *Tax Analysts,* 492 U.S. 136, 109 S.Ct. 2841. Also, like Judge Ginsburg, we doubt that Congress expected that addresses would be withheld where adequate alternative means of communication do not exist. In the private sector, courts have uniformly required disclosure of employees' addresses to unions upon such a showing. If necessary, of course, Congress can easily clarify this issue: there is no need to reconstrue the FOIA to accomplish the right result in the labor field. Moreover, we assume, *infra,* that the routine use exception will apply if alternative means of communication are shown to be inadequate.

stance Horner stated that OPM's official interpretation of its routine use is set forth in OPM's July 14, 1986 *amicus* brief, "and will remain in effect pending formal revision and issuance of a new guideline." [13]

We agree with the D.C. Circuit in *Treasury* that OPM's interpretation of its paragraph j regulation is reasonable and is due deference. The D.C. Circuit emphasized that "[a]n agency's interpretation of its own regulations is normally controlling unless it is 'plainly erroneous or inconsistent' with the language of the regulation." *Treasury*, 884 F.2d at 1454 (citing *United States v. Larionoff*, 431 U.S. 864, 872, 97 S.Ct. 2150, 2155, 53 L.Ed.2d 48 (1977)); *see also Martin v. Occupational Safety and Health Review Comm'n*, —— U.S. ——, 111 S.Ct. 1171, 1176, 113 L.Ed.2d 117 (1991) ("[W]e presume that the power authoritatively to interpret its own regulations is a component of the agency's delegated lawmaking powers."). We agree with the D.C. Circuit that deference to OPM's litigating position, in conjunction with Director Horner's adoption of that position, is appropriate, in spite of cases questioning whether agency counsel's litigating positions should be accorded deference. *Id.* at 1455–56. The D.C. Circuit reasoned that Director Horner's explicit adoption of the litigating position removed concern that judicial deference would be accorded a position that the agency itself never articulated. *Id.* at 1455. Further, the D.C. Circuit discounted the possibility that the position was developed hastily in litigation, without an adequate opportunity for presentation of conflicting views. The court emphasized that Director Horner's adoption of the position was similar to OPM's usual procedure in which guidelines are drafted by OPM staff and approved by the Director, and thus was assured that the interpretive process reflected "normal" deliberation. *Id.*

Furthermore, the Supreme Court's recent explication of deference to agency litigating positions is consistent with the D.C. Circuit's view. In *Martin*, *supra*, the Court considered whether a reviewing court should defer to the Secretary of Labor or the Occupational Safety and Health Review Commission in their reasonable but conflicting interpretations of an ambiguous regulation promulgated by the Secretary of Labor under the Occupational Safety and Health Act. The Court stated:

> Our decisions indicate that agency "litigating positions" are not entitled to deference when they are merely appellate counsel's *"post hoc* rationalizations" for agency action, advanced for the first time in the reviewing court. Because statutory and regulatory interpretations furnished in this setting occur *after* agency proceedings have terminated, they do not constitute an exercise of the agency's delegated lawmaking powers. The Secretary's interpretation of the OSH Act regulations in an administrative adjudication, however, *is* agency action, not a *post hoc* rationalization of it.

*Martin*, 111 S.Ct. at 1179 (citations omitted). Likewise here, Director Horner's explicit adoption for future application of a position advanced in an *amicus* brief in a prior case was not a *post hoc* rationalization.

OPM's position—that release of names and home addresses to the unions is not "necessary" within the meaning of paragraph j without some showing that the alternate means of communication are insufficient—is reasonable. OPM's interpretation is consistent with current law in the private sector while FLRA's position is not. As "necessity" has always included a consideration of the adequacy of alternatives in the private sector, we certainly cannot

---

**13.** As stated in Horner's letter, OPM's position is as follows:

> The new guideline will emphasize that the routine use does not establish a *per se* rule that home addresses of employees are available to exclusive representatives on request. By its terms, disclosure must be "necessary" for representation purposes.

> If adequate alternate means exist for communicating with bargaining unit employees, disclosure of home addresses is not "necessary," and the routine use does not apply.

Director Horner also indicated in her letter that she had instructed OPM staff to "promptly" issue the guidelines to fill the reserved appendix regarding this issue. Those guidelines have not been promulgated as yet.

say that OPM's similar interpretation of "necessity" under its paragraph j regulation is unreasonable. In fact, we doubt deference is required to reach OPM's construction of paragraph j. *See NLRB v. Pearl Bookbinding Co.,* 517 F.2d 1108, 1113 (1st Cir.1975);[14] *accord United Aircraft Corp. v. NLRB,* 434 F.2d 1198, 1203–06 (2d Cir.1970) (undertaking extensive review of facts prior to concluding that inadequacy of alternative methods of communication rendered disclosure of employees' names and addresses necessary), *cert. denied,* 401 U.S. 993, 91 S.Ct. 1232, 28 L.Ed.2d 531 (1971); *Prudential Ins. Co. of America v. NLRB,* 412 F.2d 77 (2d Cir.), *cert. denied,* 396 U.S. 928, 90 S.Ct. 263, 24 L.Ed.2d 226 (1969); *Standard Oil Co. v. NLRB,* 399 F.2d 639, 640 (9th Cir.1968). *But see NLRB v. Associated General Contractors,* 633 F.2d 766, 773 (9th Cir.1980) (no persuasive reason for nondisclosure of multi-employer bargaining agent's roster established in record and agent did not propose practicable alternative to disclosure; therefore, without explicit reference to "necessity," court concluded nondisclosure a failure to bargain in good faith in violation of National Labor Relations Act, § 8(a)(5), 29 U.S.C. § 158(a)(5) (1976)), *cert. denied,* 452 U.S. 915, 101 S.Ct. 3049, 69 L.Ed.2d 418 (1981).

We hold, therefore, that the "routine use" exception to the Privacy Act does not permit disclosure here, since there was no showing made of the nonexistence of adequate alternative means to communicate with employees. Disclosure of the employee's addresses in these cases would violate the Privacy Act and is not required under the Labor Statute, as neither the Privacy Act exception for disclosure required under the FOIA or the exception for disclosure

pursuant to a routine use notice is applicable. The FLRA's applications for enforcement are *denied* and the Department of the Navy's petitions for review are *granted.*

*So ordered.*

---

14. We stated in *Pearl Bookbinding:*
 There is no general rule requiring an employer to give the bargaining agent a list of the unit employees' names and addresses. However, courts have imposed such a requirement when the information is relevant and necessary to the union's performance of its duties. The existence of a duty thus depends on the factual circumstances in each case.
 517 F.2d at 1113 (citations omitted). In *Pearl Bookbinding,* the court considered options such

as handbilling and enlistment of a number of employees whose names the union did have. Recognizing that "the union's own diligence is questionable," the court noted, "the turnover rate in the company was high, and none of the current employees was a member of the union." *Id.* The court thus concluded that the NLRB's judgment that no adequate alternative means of communication existed "is sufficiently supported in the record." *Id.*