**MULTNOMAH COUNTY MEDICAL SOCIETY, Plaintiff-Appellee,**

v.

**James SCOTT, Deputy Administrator, Health Care Financing Administration; Caroline Davis, Administrator, Health Care Financing Administration; Health Care Financing Administration, Defendants-Appellants.**

**No. 86–3599.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 8, 1987.

Decided Aug. 26, 1987.

---

Al J. Daniel, Jr., Washington, D.C., for defendants-appellants.

Gregory G. Moore, Portland, Or., for plaintiff-appellee.

Before GOODWIN and THOMPSON, Circuit Judges, and CURTIS, District Judge.*

GOODWIN, Circuit Judge:

The deputy administrator of the Health Care Financing Administration appeals a court order requiring him to turn over to the plaintiff society the names and addresses of all the Medicare beneficiaries in the Portland, Oregon, metropolitan area. We reverse.

The Multnomah County Medical Society is a nonprofit professional organization comprised of 1,700 doctors, representing

* The Honorable Jesse W. Curtis, Senior United States District Judge, Central District of Califor-

nia, sitting by designation.

about 75 percent of the physicians in the Portland metropolitan area. The Medical Society filed this action under the Freedom of Information Act, 5 U.S.C. § 552 (1982) (FOIA), to compel James Scott—the deputy administrator of the Health Care Financing Administration charged with administering the Medicare program (HCFA)—to disclose the names and addresses of the area's Medicare beneficiaries. The district court granted summary judgment in favor of the Medical Society.

The background of this case involves Congress's attempt to reduce expenditures by amending the Medicare laws as part of the Deficit Reduction Act of 1984. The amendments were codified at 42 U.S.C.A. § 1395u(b)(4)(A)–(E), (h) (West Supp.1987). Congress froze the fees doctors could charge Medicare beneficiaries for a 15–month period beginning July 1, 1984. 42 U.S.C.A. § 1395u(b)(4)(A)(i). Congress also provided that, beginning in 1984, doctors could elect to become "participating physicians" if they agreed to accept Medicare's approved charge as full payment on all claims, less any deductible. 42 U.S.C.A. § 1395u(h)(1). By contrast, "nonparticipating physicians" decide whether to accept Medicare's approved charge on a case-by-case basis, and therefore can charge patients more than the approved charge reimbursable from Medicare. The incentives offered to induce doctors to become "participating physicians" are: direct payment from Medicare;[1] dissemination of participating physicians' names through directories and toll-free telephone information lines, 42 U.S.C.A. § 1395u(h); and rates potentially higher than for most nonparticipating doctors after the freeze period, 42 U.S.C.A. § 1395u(b)(4)(D); *American Medical Ass'n. v. Heckler*, 606 F.Supp. 1422, 1427 (S.D.Ind.1985).

The statute directed that the government oversee publication of the annual directory of participating physicians' names, addresses and practice specialties for each geographic area. 42 U.S.C.A. § 1395u(h)(4), (7). All Medicare beneficiaries were to receive notice of such directories through the mail; with copies available for direct purchase or for examination at branch offices of the Social Security Administration, insurance companies, senior citizen organizations and hospitals. 42 U.S.C.A. § 1395u(h)(5), (6). In addition to the directory of participating physicians, the health care administration at the time of the FOIA request in this matter also was under a duty to publish a list of participating and nonparticipating doctors indicating the percentage of Medicare claims each doctor took on a case-by-case basis. 42 U.S.C.A. §§ 1395u(i)(1) (1984), *repealed by* Pub. L. No. 99–272, Title IX, § 9301(c)(3)(A), 100 Stat. 187 (April 7, 1986).

The directory for the Portland area was published in compliance with the statute in 1984. Shortly thereafter, the Medical Society filed a Freedom of Information Act (FOIA) request with the HCFA seeking a list of all Medicare beneficiaries in the Portland metropolitan area. The Medical Society stated in its FOIA request that it wanted to send the beneficiaries a copy of its newsletter explaining the recent changes in the Medicare law along with a list of both participating and nonparticipating physicians. On November 28, 1984, the HCFA regional administrator indicated that the information was protected by the FOIA privacy exemption (5 U.S.C. § 552(b)(6) (1982)), but stated that the ultimate decision would be made by the agency's FOIA officers. On December 12, 1984, the agency's FOIA officer relied on the privacy exemption and denied the Medical Society's request. Defendant Scott then denied the Medical Society's administrative appeal on May 10, 1985.

The district court balanced the public interest in disclosure against the invasion of the beneficiaries' privacy interests and concluded that the privacy exemption of FOIA

---

1. Under the former system, no participating/nonparticipating distinction existed, and all physicians decided whether to accept Medicare assignments on a case-by-case basis. The physicians could decide whether to accept direct payment from Medicare, or whether to bill the patient for the entire bill, including any amount in excess of the "reasonable charge"—the portion reimbursable by Medicare.

did not protect the beneficiaries' names and home addresses from disclosure.

■ In reviewing judgments on FOIA demands, we must determine (1) whether the district court had an adequate factual basis for its decision, and, if so, (2) whether the legal decision was erroneous. *Dirksen v. United States Dept. of Health & Human Services*, 803 F.2d 1456, 1458 (9th Cir.1986); *Van Bourg, Allen, Weinberg & Roger v. N.L.R.B.*, 728 F.2d 1270, 1272 (9th Cir.1984). The parties do not dispute that the district court had an adequate factual basis for its decision. Additionally, the parties do not dispute the basic facts on appeal. We therefore review on purely legal grounds the judgment on cross-motions for summary judgment. *See* Fed.R. Civ.P. 56(c); *Friedlander v. United States*, 718 F.2d 294, 295 (9th Cir.1983).

■ Disclosure, not secrecy, is the policy objective of FOIA. *Department of Air Force v. Rose*, 425 U.S. 352, 361, 96 S.Ct. 1592, 1599, 48 L.Ed.2d 11 (1976). An agency may deny disclosure only if the information falls within one of the nine statutory exemptions to the disclosure requirement under 5 U.S.C. § 552(b). *Van Bourg*, 728 F.2d at 1272. The government has the burden of establishing that one of the exemptions applies. *Id.*

FOIA's privacy exemption applies to "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The parties do not dispute that the requested information falls within the scope of the privacy exemption. The issue, therefore, is whether the release of the Medicare beneficiaries' names and addresses would be a clearly unwarranted invasion of personal privacy. *United States Dep't of State v. Washington Post Co.*, 456 U.S. 595, 602, 102 S.Ct. 1957, 1962, 72 L.Ed.2d 358 (1982).

■ To determine whether an invasion of privacy is clearly unwarranted we balance four factors: (1) the plaintiff's interest in disclosure; (2) the public interest in disclosure; (3) the degree of the invasion of personal privacy; and (4) the availability of any alternative means of obtaining the requested information. *Minnis v. United States Department of Agriculture*, 737 F.2d 784, 786 (9th Cir.1984), *cert. denied*, 471 U.S. 1053, 105 S.Ct. 2112, 85 L.Ed.2d 477 (1985).

### 1. The Medical Society's Interest in Disclosure

■ Commercial interest does not warrant disclosure of otherwise private information, such as a name and address list, under FOIA. *Minnis*, 737 F.2d at 787 (commercial interest of owner of lodge on scenic river did not outweigh privacy interests of applicants for permits to travel on the river where lodge owner sought names and addresses of permit applicants under FOIA); *see also Wine Hobby U.S.A., Inc. v. United States Internal Revenue Service*, 502 F.2d 133, 137 (3rd Cir.1974) (request by distributor of amateur wine-making equipment to obtain names and addresses of all persons who registered with the United States Bureau of Alcohol, Tobacco and Firearms for a permit to produce wine for household use was for a commercial purpose and not subject to disclosure under FOIA).

■ The Medical Society argued that its interest in acquiring the names and addresses of Medicare beneficiaries was purely educational; the government contended that the motivation was purely commercial. The district court concluded that the Medical Society's true motivation lay somewhere between the two extremes, that the society's commercial/promotional interest was primary to the society's secondary interest in educating and assisting Medicare beneficiaries.

The court's finding that the Medical Society had a partly altruistic reason for wanting the name and address list is not clearly erroneous. The society's publication admittedly corrected some inaccuracies in the government's publication—principally that doctors geographically distant from the Portland area were included in the directory, and that some physicians were omitted or placed in wrong categories. (The government, however, itself issued a cor-

rected and more complete directory in January 1985.) The Medical Society also performed an educational service by directly mailing the directory to Medicare beneficiaries, and by using larger print which made the society's directory easier to read than the government's.

Despite these factors, the actual content of the society's directory demonstrates that the society's motivation is overwhelmingly commercial, which does not weigh favorably in the balance toward disclosure. *Minnis*, 737 F.2d at 787. The Medical Society's publication adds little or no information to that contained in the government-sponsored directory. Congress intended the directory to be an incentive to doctors to become "participating physicians," and hence, listed only participating physicians in the government directory. The Medical Society's publication lumps all the doctors together, failing to distinguish which doctors are "participating" or "nonparticipating." It also fails to reveal the percentage of Medicare claims each doctor accepts. The one-page explanation preceding the list merely says that the list includes doctors willing to take assignment on all Medicare claims or on a case-by-case basis, but that "It is up to the patient to discuss with his or her doctor the financial conditions of receiving payment—not the federal government." The explanation also contains other self-serving statements, such as:

> Many of you have expressed concern over some new provisions in the Medicare law. The physicians of the Multnomah County Medical Society want you to know that we are totally dedicated to providing all of our members' patients with the highest quality care at a reasonable cost. For us, responding to your medical needs has always been—and will always be—the fundamental reason for being doctors.
>
> ....
>
> You will not be forced to choose a new physician.
>
> ....
>
> If your private physician does not appear on the list, please contact him or her and ask whether or not they take assignment and under what conditions assignment is accepted.

Rather than a document of clarification, the Medical Society's publication obscures the difference between participating and nonparticipating physicians. In fact, the Medical Society's publication fails to explain a critical difference between participating and nonparticipating physicians: That a nonparticipating physician who does not accept assignment on a particular claim is entitled to charge the patient in excess of the amount reimbursed by Medicare. As the government pointed out at oral argument, such information is material to the majority of Medicare beneficiaries who are on limited budgets. This omission—along with the failure to distinguish participating and nonparticipating physicians—tends to reveal the Medical Society's commercial motivations. The publication provides virtually no information to the beneficiaries that was not disclosed in the original government publication or in later corrected versions.

In light of abundant evidence of commercial motivation, the trial court erred in assuming as a matter of law that *Minnis* mandated disclosure apparently because the Medical Society's intent was not purely commercial. The *Minnis* rationale also counsels nondisclosure in cases such as this where the commercial motive significantly outweighs any other motivation favoring disclosure of information within the privacy exemption to FOIA, 5 U.S.C. § 552(b)(6).

The Medical Society relies on a trio of cases in which the government was ordered to disclose name and address lists where the release did not constitute a clearly unwarranted invasion of privacy under 5 U.S.C. § 552(b)(6). The cases are distinguishable from the instant case, however, because in each case the public interest in the release was high and because the private interest was not overwhelmingly commercial but primarily educational. *Kurzon v. Dept. of Health & Human Services*, 649 F.2d 65 (1st Cir.1981) (disclosure of names and business addresses of unsuccessful applicants for National Cancer Institute research grants for a study to determine if

innovative research proposals had been fairly evaluated); *Getman v. NLRB,* 450 F.2d 670 (D.C.Cir.1971) (bare lists of names and addresses of employees which employers were required to give to the NLRB were discloseable to law professors conducting NLRB voting study since invasion would be minimal in light of strong public interest in empirical results of voting study and where no alternative unbiased means of getting the information existed); *Disabled Officer's Ass'n v. Rumsfeld,* 428 F.Supp. 454 (D.D.C.1977) (disclosure of names and addresses of retired disabled officers was outweighed by public interest where the organization might not survive as an organization without the requested information, the association had no other means of acquiring the information, the invasion would be limited, and where disclosure would benefit the officers), *aff'd,* 574 F.2d 636 (D.C.Cir.1978).

Congress intended the public to use FOIA "to open agency action to the light of public scrutiny," *Rose,* 425 U.S. at 361, 96 S.Ct. at 1599, and "to ensure an informed citizenry ... needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 242, 98 S.Ct. 2311, 2327, 57 L.Ed.2d 159 (1978). The requested information in this case does nothing to further these policy objectives. Hence, the Medical Society's mixed commercial and educational interest does not weigh in favor of disclosure.

### 2. *The Public Interest in Disclosure*

■ The district court found that the public's interest in disclosure was in receiving a publication more available, accurate and complete than the government publications.

Certainly direct mailing makes the lists more available. But the greater availability of lists that contain misinformation is not a virtue. Lists that fail adequately to define and distinguish participating and nonparticipating physicians are of questionable public interest and value. The association's accuracy argument fails where the government corrected the inaccuracies in the original version of its publications. The final reason, completeness of the society's publication, is also self-serving. The evidence is overwhelming that the society was primarily interested in including in the list its members who are nonparticipating physicians so that they would not fall from public notice in light of the government's directory listing only "participating physicians."

In enacting its 1984 amendments to the Medicare law, Congress announced that it was in the public interest to provide incentives for physicians to become "participating physicians" and to accept assignment for all Medicare claims. The Medical Society's directory does nothing to advance the public interest as determined by Congress.

### 3. *Degree of Invasion of Privacy*

■ Against the asserted public and private interests, we must balance the degree of invasion of the beneficiaries' privacy interests. We recognized in *Minnis* that disclosure of names and addresses in government files "would implicate more than a minimal privacy interest." *Minnis,* 737 F.2d at 787. In drafting Exemption 6, Congress's primary concern was to provide for the confidentiality of personal matters in files maintained by government agencies. *Rose,* 425 U.S. at 375 n. 14, 96 S.Ct. at 1606 n. 14.

The district court seriously undervalued the beneficiaries' privacy interest. Disclosure of the beneficiaries' identities would reveal either that they are senior citizens or disabled. On this subject the district court noted: "The fact that a person is over 65 and/or disabled should not be deemed embarrassing in a humane society." Embarrassment is not the only test of whether something should be disclosed under the privacy exemption. In *Minnis,* this court was concerned that disclosure of the names and addresses of applicants for permits to raft on the Rogue River in Southern Oregon would reveal the applicants' personal interests in water sports and the out-of-doors, potentially making them subject to an unwanted barrage of mailings and personal solicitations. *Minnis,* 737

F.2d at 787. Similarly, Medicare beneficiaries could be subject to mailings and solicitations if the name and address list were accidentally or otherwise revealed to other organizations. We also note that the Medical Society seeks to obtain HCFA patient lists which its members would treat as confidential in their own offices.

Because the balance weighs against disclosure in terms of the society's interest and the public interest, we find that the privacy interest involved is more than minimal. *Minnis*, 737 F.2d at 787–88. Medicare beneficiaries have a right not to have their age and disability status made public in the absence of more compelling public and private interests favoring disclosure than are found in this case.

### 4. *Alternative Means*

The parties agree that there are no alternative means of obtaining the requested information. This factor is not dispositive, however. *Minnis*, 737 F.2d at 788. The Medical Society seeks disclosure of the Medicare beneficiaries in order to clarify the supposed confusion surrounding HCFA's list of "nonparticipating" physicians. The Medical Society could resolve this problem by having its members send their own patients literature on the supposed confusion.

In employing the *Minnis* balancing test, we conclude that the district court erred when it ordered the FOIA disclosure of the names and addresses of Medicare beneficiaries.

REVERSED.