958 F.2d 1490
 139 L.R.R.M. (BNA) 2762, 60 USLW 2615
 FEDERAL LABOR RELATIONS AUTHORITY, Petitioner,
v.
U.S. DEPARTMENT OF the NAVY, NAVY RESALE & SERVICES SUPPORT
OFFICE, FIELD SUPPORT OFFICE, AUBURN, WASHINGTON,
Respondent.
U.S. DEPARTMENT OF the NAVY, NAVY RESALE & SERVICES SUPPORT
OFFICE, FIELD SUPPORT OFFICE, AUBURN, WASHINGTON, Petitioner,
v.
FEDERAL LABOR RELATIONS AUTHORITY, Respondent.
FEDERAL LABOR RELATIONS AUTHORITY, Petitioner,
v.
U.S. DEPARTMENT OF the NAVY, NAVY PUBLICATIONS AND PRINTING
SERVICE, DETACHMENT OFFICE, OAKLAND, CALIFORNIA,
Respondent.
U.S. DEPARTMENT OF the NAVY, NAVY PUBLICATIONS AND PRINTING
SERVICE, DETACHMENT OFFICE, OAKLAND, CALIFORNIA, Petitioner,
v.
FEDERAL LABOR RELATIONS AUTHORITY, Respondent.
FEDERAL LABOR RELATIONS AUTHORITY, Petitioner,
v.
U.S. DEPARTMENT OF the NAVY, NAVY POSTGRADUATE SCHOOL,
MONTEREY, CALIFORNIA, Respondent.
U.S. DEPARTMENT OF the NAVY, NAVY POSTGRADUATE SCHOOL,
MONTEREY, CALIFORNIA, Petitioner,
v.
FEDERAL LABOR RELATIONS AUTHORITY, Respondent.
FEDERAL LABOR RELATIONS AUTHORITY, Petitioner,
v.
U.S. DEPARTMENT OF the NAVY, NAVAL AIR STATION, ALAMEDA,
CALIFORNIA, Respondent.
U.S. DEPARTMENT OF the NAVY, NAVAL AIR STATION, ALAMEDA,
CALIFORNIA, Petitioner,
v.
FEDERAL LABOR RELATIONS AUTHORITY, Respondent.
FEDERAL LABOR RELATIONS AUTHORITY, Petitioner,
v.
U.S. DEPARTMENT OF the NAVY, NAVAL HOSPITAL, OAKLAND,
CALIFORNIA, Respondent.
U.S. DEPARTMENT OF the NAVY, NAVAL HOSPITAL, OAKLAND,
CALIFORNIA, Petitioner,
v.
FEDERAL LABOR RELATIONS AUTHORITY, Respondent.
FEDERAL LABOR RELATIONS AUTHORITY, Petitioner,
v.
UNITED STATES DEPARTMENT OF INTERIOR, Respondent.
UNITED STATES DEPARTMENT OF INTERIOR, Petitioner,
v.
FEDERAL LABOR RELATIONS AUTHORITY, Respondent.
FEDERAL LABOR RELATIONS AUTHORITY, Petitioner,
v.
UNITED STATES DEPARTMENT OF LABOR, OFFICE OF the ASSISTANT
SECRETARY FOR ADMINISTRATION AND MANAGEMENT, SAN
FRANCISCO, CALIFORNIA, Respondent.
 Nos. 90-70511, 90-70513 to 90-70517, 90-70535, 90-70538 to
90-70542 and 90-70679.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 13, 1992.
Decided March 18, 1992.
 
 Pamela P. Johnson, Federal Labor Relations Authority, Washington, D.C., for petitioner-respondent.
 Lori M. Beranek, U.S. Dept. of Justice, Washington, D.C., for respondents-petitioners.
 Petitions for Review of Decisions of the Federal Labor Relations Authority.
 Before FLETCHER, D.W. NELSON and FERNANDEZ, Circuit Judges.
 FLETCHER, Circuit Judge:
 
 
 1
 These seven consolidated cases present a single question of law: Are federal agencies required to release the home addresses of their employees to the unions which are the exclusive representatives of the employees' bargaining units?
 
 
 2
 The Federal Service Labor-Management Relations Statute (the "Labor Statute") requires disclosure of such information unless it is otherwise prohibited by law. 5 U.S.C. § 7114(b)(4). The Privacy Act prohibits disclosure as a general rule, but contains two exceptions: disclosures required by the Freedom of Information Act ("FOIA") and disclosures for "routine use." 5 U.S.C. § 552a. At one time, it was settled that disclosure of federal employees' addresses to their exclusive representative was required by FOIA. Respondents argue that the Supreme Court's interpretation of FOIA in United States Department of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 749, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989) ("Reporters Committee") changed the law and therefore mandates a different result. The Federal Labor Relations Authority ("FLRA") argues the opposite.
 
 BACKGROUND
 
 3
 The cases arose on identical stipulated facts. Labor unions filed unfair labor practice charges against federal employers ("the agencies") that refused to divulge the home addresses of the employees in each union's bargaining unit. FLRA followed its ruling in U.S. Department of the Navy, Portsmouth Naval Shipyard, Portsmouth, New Hampshire, 37 FLRA No. 39 (1990) ("Portsmouth") to hold that the failure to disclose the addresses was an unfair labor practice. FLRA now applies to this court for enforcement, and the agencies cross-petition for review of the orders.
 
 
 4
 The legal background is more complicated. This question has been litigated many times before, and at one time the issue seemed settled. Farmer's Home Administration Finance Office, St. Louis, Missouri, 23 FLRA No. 101 (1986) ("Farmers Home Administration") held that disclosures of this sort fell within both exceptions to the Privacy Act. First, Farmers Home Administration found that disclosure was required under FOIA, because the addresses were not protected by FOIA's Exemption 6, which exempts disclosures "which would constitute a clearly unwarranted invasion of privacy." 5 U.S.C. § 552(b)(6). Farmers Home Administration reasoned that the strong public interest in collective bargaining for federal employees outweighed the relatively small privacy interest in an employee's home address. Id. at 792-93. Second, the Authority found that disclosure fell within the Privacy Act's exception for "routine use," 5 U.S.C. § 552a(b)(3). Id. at 793-94.
 
 
 5
 Every court to examine the issue reached the same result as Farmers Home Administration. All concluded that FOIA required disclosure, so none reached the routine use exception. Most circuits cited the special responsibilities of unions under the Labor Statute and the public interest in collective bargaining.[1] United States Department of the Navy and Philadelphia Naval Shipyard v. FLRA, 840 F.2d 1131 (3d Cir.), cert. dismissed, 488 U.S. 881, 109 S.Ct. 632, 102 L.Ed.2d 170 (1988); United States Department of Agriculture v. FLRA, 836 F.2d 1139 (8th Cir.1988), vacated on other grounds and remanded, 488 U.S. 1025, 109 S.Ct. 831, 102 L.Ed.2d 964 (1989); United States Department of Health & Human Services v. FLRA, 833 F.2d 1129 (4th Cir.1987), cert. dismissed, 488 U.S. 880, 109 S.Ct. 632, 102 L.Ed.2d 170 (1988), American Federation of Government Employees, Local 1760 v. FLRA, 786 F.2d 554 (2d Cir.1986) (decided before Farmers Home Administration ). The Seventh Circuit without reference to the duties of unions under the Labor Statute found disclosure necessary under FOIA. United States Department of the Air Force v. FLRA, 838 F.2d 229 (7th Cir.), cert. dismissed, 488 U.S. 880, 109 S.Ct. 632, 102 L.Ed.2d 170 (1988).
 
 
 6
 Although the precise question has never been squarely presented to this circuit, our pre-Reporters Committee cases suggest that we would have reached the same result. In Van Bourg, Allen, Weinberg & Roger v. NLRB, 728 F.2d 1270 (9th Cir.1984) ("Van Bourg"), we held that FOIA required the NLRB to release names and addresses of employees eligible to vote in a representation election to a rival union that suspected irregularities in the voting. We concluded that the strong public interest in assuring the integrity of the collective bargaining process outweighed employees' interest in keeping their home addresses private. Id. at 1273-74. In Local 598 v. Dept. of Army Corps of Engineers, 841 F.2d 1459 (9th Cir.1988), we reviewed a district court's order requiring the Army Corps of Engineers to release names and addresses to a union that suspected the Corps of violating labor standards. The issue appealed in Local 598 was the propriety of awarding attorney's fees to the union. We held that fees were warranted, in part because disclosure created a public benefit. "A strong public interest is served where, as here, the underlying purpose of disclosure is the enforcement of federal laws embodying important congressional policies." Id. at 1461.
 
 
 7
 There things stood until the Supreme Court's decision in Reporters Committee. In that case, news organizations asked to examine FBI "rap sheets" of various suspected organized crime figures.[2] The Court held that FOIA did not require their disclosure. When balancing the public interest in disclosure against possible invasions of privacy, the Court said, the public interest that matters is the right of citizens "to know what their government is up to."
 
 
 8
 This basic policy of "full agency disclosure unless information is exempted under clearly delineated statutory language" indeed focuses on the citizens' right to be informed about "what their government is up to." Official information that sheds light on an agency's performance of its statutory duties falls squarely within that statutory purpose. That purpose, however, is not fostered by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct.
 
 
 9
 Reporters Committee, 489 U.S. at 773, 109 S.Ct. at 1481 (citations omitted).
 
 
 10
 Lower courts now faced the question whether Reporters Committee altered the FOIA analysis of Farmers Home Administration. In FLRA v. United States Department of the Treasury, Financial Management Service, 884 F.2d 1446 (D.C.Cir.1989) ("Treasury"), cert. denied, 493 U.S. 1055, 110 S.Ct. 864, 107 L.Ed.2d 948 (1990), the D.C. Circuit held that it did. Prior cases had considered the Labor Statute's disclosure requirement to be a public interest weighing in the Exemption 6 balance. But because disclosure of addresses to the unions would not enlighten the public about "what the Government is up to," Treasury declined to consider "the special public interest in advancing collective bargaining as an aspect of the disclosure value." Id. at 1451. As a result, it held that Exemption 6 barred disclosure. It also held that disclosure was not required as a routine use. Id. at 1453-56. The First Circuit agreed with Treasury. FLRA v. Department of the Navy, 941 F.2d 49 (1st Cir.1991) ("First Circuit Navy"). The Third Circuit did the same in a 2-1 decision that has been vacated pending rehearing en banc. FLRA v. Department of the Navy, 944 F.2d 1088 (3d Cir.1991) (withdrawn).
 
 
 11
 FLRA's subsequent opinion in Portsmouth found Reporters Committee inapplicable, expressly rejected Treasury, and held that Farmers Home Administration was still the controlling law. (FLRA is permitted to test its interpretation of statutes in the various circuits, and is not required to adhere to Treasury in its litigation of other cases. United States v. Mendoza, 464 U.S. 154, 104 S.Ct. 568, 78 L.Ed.2d 379 (1984).) FLRA has relied on Portsmouth in all subsequent litigation on this issue, including the cases now on appeal before us. A 2-1 decision of the Fourth Circuit agreed with Portsmouth. FLRA v. Department of Commerce, 954 F.2d 994 (4th Cir.1992) ("Commerce").
 
 JURISDICTION
 
 12
 This court's jurisdiction to enforce FLRA decisions arises from 5 U.S.C. § 7123(b).
 
 STANDARD OF REVIEW
 
 13
 FLRA's reasonable interpretations of the Labor Statute are entitled to judicial deference. However, FLRA has no special expertise in interpreting the Privacy Act or FOIA. Therefore, questions of law arising from those statutes are reviewed de novo. First Circuit Navy, 941 F.2d at 54-55; Treasury, 884 F.2d at 1449, 1451.
 
 DISCUSSION
 
 14
 Under the Labor Statute, federal employers must furnish to unions such data as is "necessary for full and proper discussion, understanding, and negotiation of subjects within the scope of collective bargaining." 5 U.S.C. § 7114(b)(4)(B). A threshold question in this case is whether home addresses are "necessary," given potential alternative means for the union to communicate with employees. FLRA has stated its view that addresses are necessary so that the union's direct-mail literature can reach employees free of the mediation of the employer-controlled workplace. See Farmers Home Administration at 795-98; Portsmouth at 522-23. "[O]ther means of communication, such as desk drops, direct distributions, meetings, bulletin boards, and direct personal contacts" do not share this trait, and FLRA declines to examine their feasibility as alternative modes of communication on a case-by-case basis. Farmers Home Administration at 796. This is not an unreasonable interpretation of the Labor Statute, and this court is bound, like every circuit court that has considered the question, to defer to FLRA's expertise in this area. Judge Sentelle's concurrence in Treasury was the only opinion to express any doubt about this point, but he, too, ultimately accepted the "weight of authority ... upholding the FLRA's decision." 884 F.2d at 1461 (Sentelle, J., concurring). Because the addresses are necessary to the unions, disclosure is required under the Labor Statute unless it is otherwise "prohibited by law." 5 U.S.C. § 7114(b).
 
 
 15
 The Privacy Act is incorporated by the Labor Statute's "prohibited by law" language. The Privacy Act prohibits disclosure of government information regarding any person without that person's written consent. 5 U.S.C. § 552a(b). There is an exception, however, for disclosures required by FOIA. 5 U.S.C. § 552a(b)(2). FOIA's structure is a mirror image of the Privacy Act. It requires disclosure as a general principle, 5 U.S.C. § 552(a), but allows agencies to retain documents that fall into enumerated exemptions, 5 U.S.C. § 552(b). The exemptions to FOIA are to be narrowly construed so as to favor full disclosure. Department of Justice v. Julian, 486 U.S. 1, 8, 108 S.Ct. 1606, 1611, 100 L.Ed.2d 1 (1988); Department of the Air Force v. Rose, 425 U.S. 352, 361, 96 S.Ct. 1592, 1599, 48 L.Ed.2d 11 (1976); EPA v. Mink, 410 U.S. 73, 79, 93 S.Ct. 827, 832, 35 L.Ed.2d 119 (1973). The burden is on the government to demonstrate that a given document falls within a statutory exemption. Bowen v. United States Food and Drug Administration, 925 F.2d 1225, 1226 (9th Cir.1991).
 
 
 16
 The agencies argue that employees' home addresses are shielded by Exemption 6, which protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 6 was designed to protect " 'individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information.' " Id. at 1228 (quoting U.S. Department of State v. Washington Post Co., 456 U.S. 595, 599, 102 S.Ct. 1957, 1960, 72 L.Ed.2d 358 (1982)). This is not a blanket exemption for personnel files; a balancing test determines what is a "clearly unwarranted invasion of personal privacy" under Exemption 6. The statute calls for "a balancing of interests between the protection of an individual's private affairs from unnecessary public scrutiny, and the preservation of the public's right to governmental information." Rose, 425 U.S. at 372, 96 S.Ct. at 1604 (citation omitted). The Ninth Circuit balances four factors in Exemption 6 cases: (1) the plaintiff's interest in disclosure; (2) the public's interest in disclosure; (3) the degree of the invasion of personal privacy; and (4) the availability of any alternate means of obtaining the requested information. Multnomah County Medical Society v. Scott, 825 F.2d 1410, 1413 (9th Cir.1987); Minnis v. Department of Agriculture, 737 F.2d 784, 786 (9th Cir.1984), cert. denied, 471 U.S. 1053, 105 S.Ct. 2112, 85 L.Ed.2d 477 (1985); Van Bourg, 728 F.2d at 1273.
 
 1. The plaintiff's interest in disclosure
 
 17
 The unions want the addresses of federal employees so that they can freely communicate with unit employees through mailings that can be read in a setting free of employer supervision. Direct mailings place the content, timing and frequency of communications within the unions' exclusive control, and eliminate the possibility of employer interference. Farmers Home Administration at 796-97. Disclosure of home addresses would allow the unions to better execute their statutory responsibility "for representing the interests of all employees in the unit it represents without discrimination and without regard to labor organization membership." 5 U.S.C. § 7114(a)(1). The unions' interest in disclosure is strong.
 
 
 18
 It is also non-commercial. We have previously held that "commercial interest should not weigh in favor of mandating disclosure of a name and address list." Minnis, 737 F.2d at 787 (disclosure not required in part because plaintiff's interest in disclosure of names and addresses of persons receiving permits to raft on scenic river was to advertise his nearby lodge). See also Multnomah, 825 F.2d at 1413-1415 (medical society desired list of Medicare recipients in order to mail solicitations, an "overwhelmingly commercial" interest "which does not weigh favorably in the balance toward disclosure"). There is no evidence suggesting that the unions plan to sell the lists, advertise, or otherwise seek commercial advantage through its mailings. Rather, they intend to inform employees about union activities, the status of collective bargaining, and similar work-related issues. While the unions undoubtedly wish to improve the financial condition of their memberships, they do not act out of commercial self-interest.
 
 
 19
 The agencies argue that because "the identity of the requesting party has no bearing on the merits of his or her FOIA request," Reporters Committee, 489 U.S. at 771, 109 S.Ct. at 1480, requiring the agencies to disclose employee addresses to the unions would necessarily require that they be disclosed to all requesting merchandisers as well. This argument confuses the identity of the requester with the interest asserted by the requester. It would be improper, for example, for the government to disclose information to the New York Times but not to the National Enquirer on the grounds that one is the "better" newspaper, or because one was investigating the more "valuable" story. FOIA does not play favorites. See Reporters Committee, 489 U.S. at 775, 109 S.Ct. at 1482 ("If respondents are entitled to have the FBI tell them what it knows about Medico's criminal history, any other member of the public is entitled to the same disclosure"). In this case, however, the direct-mail merchandiser cannot assert the same interest as the labor union. The merchandiser has no statutory duty to represent all employees within the bargaining unit and no mission to lead the fight for higher wages and improved working conditions. The interest it asserts is purely commercial, a fact that our precedents and the statute itself have always been willing to take into account. See Multnomah, 825 F.2d at 1413-15; Minnis, 737 F.2d at 787; 5 U.S.C. § 552(a)(4)(A)(ii)-(iii) (Supp.1991) (permitting higher document production fees "when records are requested for commercial use" compared to when disclosure "is not primarily in the commercial interest of the requester"). See also Treasury, 884 F.2d at 1453 ("the argument here is not that the identity of the requester should alter the disclosure interest, but rather that a congressional (non-FOIA) disclosure mandate might do so"). Because the union's interest in access to the addresses is significant and non-commercial, we find that the plaintiffs' interest weighs in favor of disclosure.
 
 2. The public's interest in disclosure
 
 20
 In enacting the Labor Statute, Congress declared that collective bargaining for public employees "safeguards the public interest" and "contributes to the effective conduct of public business." 5 U.S.C. § 7101(a)(1). These statements of the public interest militate strongly in favor of disclosure. However, the agencies argue that after Reporters Committee these express Congressional findings have no place in the Exemption 6 balance incorporated into the Labor Statute. We disagree.
 
 
 21
 The agencies' reading of Reporters Committee takes it beyond its intended and appropriate context. The plaintiffs in that case were reporters asking that the government release personal information about a particular person. Their request arose directly under FOIA.[3] Reporters Committee explicitly acknowledged that it dealt with "the typical case in which one private citizen is seeking information about another." 489 U.S. at 773, 109 S.Ct. at 1481. In such a case, the only public interest the Court could discern was "FOIA's central purpose[:] to ensure that the Government's activities be opened to the sharp eye of public scrutiny." Id. at 774.
 
 
 22
 In this case, the unions predicate their disclosure request not directly under FOIA, but under section 7114(b)(4) of the Labor Statute. The Labor Statute has declared the public interest in favor of collective bargaining in unmistakable terms. We doubt that Congress intended that its statement of the public interest in section 7101(a)(1) be ignored when examining the public interest element incorporated into section 7114(b)(4) through FOIA. Nor does Reporters Committee compel such a result. "Nothing in [Reporters Committee ] suggests that the Court had considered and rejected the relevance of public interest objectives identified by Congress in other disclosure statutes." Treasury, 884 F.2d at 1453. Our conclusion is in harmony with that of the Fourth Circuit.
 
 
 23
 [In Reporters Committee ], the Supreme Court considered a request for information made solely under the FOIA. No other federal statute was directly involved. Here, the Union requested the information under § 7114(b)(4)(B) of the FS Labor Statute, which directs the litigants to the Privacy Act which, in turn, directs them to the FOIA. We find this distinction critical [.]
 
 
 24
 Commerce, at 997 (emphasis added). The public interest in fostering collective bargaining therefore weighs heavily in favor of disclosure.
 
 
 25
 3. The degree of the invasion of personal privacy
 
 
 26
 Other circuits have ascribed wildly different weights to the strength of the privacy interest in one's home address. See cases collected in Treasury, 884 F.2d at 1459 (Ginsburg, J., concurring) (privacy interest in one's home address variously described as "not particularly compelling", "modest", "minimal", "minuscule", "limited", but also "strong") and in First Circuit Navy, 941 F.2d at 55-56 ("not ... of crucial significance", "significant", "unquestionably ... some privacy", "minuscule", "cognizable privacy interest", "strong privacy interest", "little privacy in one's name and home address"). This circuit has described the interest both as "minimal," Van Bourg, 728 F.2d at 1274, and "more than minimal," Minnis, 737 F.2d at 787; Multnomah, 825 F.2d at 1415.
 
 
 27
 These divergent estimates arose because one's name and address on a list reveal not two pieces of information, but three: one's name, one's address, and the fact that one belongs on the list. Persons on the Minnis list were rafting enthusiasts. Persons on the Multnomah list were Medicare recipients. Those lists reveal more about their subjects' lifestyles, ages or health than is revealed in a list of employees of a federal agency. While there is undoubtedly an interest in avoiding "an unwanted barrage of mailings and personal solicitations," Minnis, 737 F.2d at 787, we agree with Van Bourg that the interest in keeping one's home address from the union bargaining on one's behalf is minimal.
 
 
 28
 4. Alternate means of obtaining the information
 
 
 29
 The agencies argue that the unions could obtain home addresses of employees by approaching them in the workplace. This argument fails for the same reasons underlying FLRA's conclusion that home addresses were "necessary" to unions under the Labor Statute. Those workers who are reluctant to engage in union activities at the workplace may also be reluctant to give their addresses to union representatives at the workplace. Since the union has a statutory duty to represent all employees "without discrimination and without regard to labor organization membership," 5 U.S.C. § 7114(a)(1), it needs to be able to send its mailings to all employees, not just those who voluntarily sign up for them.[4]
 
 
 30
 Taking these four factors together, we conclude that the unions' interest in carrying out their statutory duties, the public's interest in fostering collective bargaining for federal employees, and the difficulty in obtaining the information in other ways outweigh the privacy interest of those employees who wish to keep their home addresses from the unions. The agencies have not met their burden of showing that disclosure would constitute "a clearly unwarranted invasion of privacy." Our conclusion is consistent with FOIA's "strong presumption in favor of disclosure," United States Department of State v. Ray, --- U.S. ----, 112 S.Ct. 541, 547, 116 L.Ed.2d 526 (1991), the purposes of the Labor Statute, and with the Privacy Act's FOIA exception.
 
 
 31
 Because disclosure is required by FOIA, we decline to examine whether it would fall into the Privacy Act's exception for routine use.
 
 CONCLUSION
 
 32
 Reporters Committee did not alter the rule that disclosure of employees' home addresses to the exclusive representative of their bargaining unit falls within the FOIA exception of the Privacy Act and is therefore required by the Labor Statute. FLRA's order enjoining the agencies' refusal to disclose the addresses as an unfair labor practice is ENFORCED.
 
 
 33
 FERNANDEZ, Circuit Judge, dissenting.
 
 
 34
 The issues involved in this case are, we are told, being litigated in all circuits. A number of courts have already published opinions on this subject, and I see no reason to burden the legal world's already groaning bookshelves with an extended rehearsal of the reasoning of those courts which have rejected the FLRA position. Suffice it to say that I accept their reasoning. Thus, I will merely cite those cases, and add a few brief reflections.
 
 
 35
 The reasons for not enforcing the FLRA's orders are well stated in FLRA v. Department of the Navy, 941 F.2d 49 (1st Cir.1991) and FLRA v. Department of Treasury, 884 F.2d 1446 (D.C.Cir.1989) cert. denied, 493 U.S. 1055, 110 S.Ct. 863, 107 L.Ed.2d 947 (1990). They were also cogently outlined in a panel opinion in FLRA v. Department of the Navy, 944 F.2d 1088 (3d Cir.1991), an opinion which has since been withdrawn because the Third Circuit has granted an en banc rehearing of the case. See also Hopkins v. HUD, 929 F.2d 81 (2d Cir.1991).
 
 
 36
 The First Circuit and the District of Columbia Circuit have also addressed the subject that the majority does not address--the effect of the Privacy Act's exception for routine use. They properly have found that the blanket FLRA order cannot be supported by that exception.
 
 
 37
 Having said this much, I will simply underscore a few points made by those courts in order to indicate the important issues on which they, and I, differ with the majority.
 
 
 38
 First, the relevant interest of the unions and the public in disclosure must be considered nil in the context of FOIA. That is because the sole interest recognized under that enactment is an interest of citizens in knowing " 'what their government is up to.' " Department of Justice v. Reporters Committee, 489 U.S. 749, 773, 109 S.Ct. 1468, 1481, 103 L.Ed.2d 774 (1989). See also Department of State v. Ray, --- U.S. ----, 112 S.Ct. 541, 549, 116 L.Ed.2d 526 (1991). Moreover, there is no need to harmonize the Labor Statute with FOIA. Congress directed the proper approach when it required that disclosures must not be prohibited by law. This disclosure is prohibited by law as far as FOIA is concerned, unless it comports with FOIA's own core requirement. It does not.
 
 
 39
 Second, if the relevant interest in disclosure is nil, it takes very little on the side of the privacy interest to outweigh it. As the majority points out, the privacy interest involved here has been characterized in many ways by many judges. One fears that the varying characterizations have little to do with law and a good deal to do with the value that each judge places on this kind of privacy. I, for one, give it substantial weight. At any rate, everyone agrees that it has some weight. That should suffice for FOIA purposes. Incidentally, it seems to me that the lists the unions seek, like the others referred to by the majority, reveal much more than names and addresses. They also reveal the fact that an employee works for a particular agency of the government, and, depending on the focus of the particular union, they may also reveal the kind of work the person does. For example, one supposes that a list obtained by an airport controllers union would contain information about airport controllers.
 
 
 40
 Finally, because FOIA does not discriminate among recipients or uses of information, if the unions are entitled to break the seal of privacy and throw open the doors of this adytum, the doors will be opened to everyone. That will even be true if the unions themselves do not further release the information. Nothing prevents them from doing so. The majority states that unions have interests which are different from those of others. But FOIA has no such limitation. Indeed, the majority's assertion of that element seems to be an implicit rejection of the Reporters Committee holding that the identity and interests of the requesting party are beside the point. As the Court said:
 
 
 41
 If respondents are entitled to have the FBI tell them what it knows about Medico's criminal history, any other member of the public is entitled to the same disclosure--whether for writing a news story, for deciding whether or not to employ Medico, to rent a house to him, to extend credit to him, or simply to confirm or deny a suspicion.
 
 
 42
 Reporters Committee, 489 U.S. at 775, 109 S.Ct. at 1482. In other words, whether your interests are driven by news, need or nebbiness, your rights under FOIA are the same.
 
 
 43
 The FLRA's determination that it has the authority to abolish FOIA protections on a blanket basis whenever it deems that "necessary" is contrary to law. Thus, I respectfully dissent.
 
 
 
 [1]
 "The Congress finds that ... labor organizations and collective bargaining in the civil service are in the public interest." 5 U.S.C. § 7101(a)
 
 
 [2]
 Strictly speaking, Reporters Committee was decided on the basis of FOIA's Exemption 7(C) (disclosure not required for law enforcement records whose release "could reasonably be expected to constitute an unwarranted invasion of privacy"), and not on Exemption 6 (disclosure not required for personnel, medical or similar files whose release "would constitute a clearly unwarranted invasion of privacy"), which is implicated in this case. However, Reporters Committee relied on the leading Exemption 6 case, Department of Air Force v. Rose, 425 U.S. 352, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976). The court's broad statements about FOIA cause us to consider its possible implications for other FOIA cases
 
 
 [3]
 The same can be said about United States Department of State v. Ray, --- U.S. ----, 112 S.Ct. 541, 116 L.Ed.2d 526 (1991), also cited by the agencies. Ray involved a private citizen's request for information directly under FOIA, and was primarily decided on the narrow factual ground that the release of unredacted versions of certain documents which were already disclosed in redacted form would be an invasion of privacy
 
 
 [4]
 We are not presented here with the case of an employee who asks to be removed from the union's mailing list. Such a case would raise unique issues that we need not reach here