5 F.3d 447
 42 Soc.Sec.Rep.Ser. 292
 Mark JONES, Ira B. Johnson, Orlando Corona, individually and
on behalf of all similarly situated persons,
Plaintiffs-Appellants,
v.
Donna W. SHALALA, M.D.*, Secretary of Health and
Human Services and Gwendolyn King, Commissioner of
the Social Security Administration,
Defendants-Appellees.
 No. 93-15180.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Aug. 31, 1993.
Decided Sept. 23, 1993.
 
 Curtis L. Child, Legal Service of Northern California, Sacramento, CA, for plaintiffs-appellants.
 Edward F. Brennan, Asst. U.S. Atty., Sacramento, CA, for defendants-appellees.
 Appeal from the United States District Court for the Eastern District of California.
 Before: REAVLEY**, PREGERSON, and FERNANDEZ, Circuit Judges.
 PREGERSON, Circuit Judge:
 
 I. Overview
 
 1
 Plaintiffs are a class of Supplemental Security Income ("SSI") recipients. Each member of the class received nonrecurring (one-time) income during the first month of SSI eligibility. Under a policy established by the Secretary of Health and Human Services (the "Secretary"), the amount of plaintiffs' nonrecurring income in the first month was used to reduce the benefit payments in the first, second, and third months of SSI eligibility. Plaintiffs contend that this policy violates the Supplemental Security Income for Aged, Blind, and Disabled Act, 42 U.S.C. Sec. 1382(c)(2) (the "Act"). The Secretary contends that her policy is consistent with the Act.
 
 
 2
 The district court certified the class, denied plaintiffs' motion for summary judgment, and granted the Secretary's cross-motion for summary judgment. Plaintiffs timely appeal the district court's summary judgment order in favor of the Secretary.[1] We have jurisdiction under 28 U.S.C. Sec. 1291. We reverse.
 
 II. Background
 
 3
 Named plaintiff Mark Jones is a recipient of SSI. Jones first became eligible for SSI benefits in March 1989, lost his eligibility in June 1991, when he was incarcerated, and became eligible again in February 1992, upon his release from prison. In February 1992, Jones received a one-time "gate release" payment in the amount of $200 and in-kind income in the form of food and lodging while in prison. The Secretary deducted this nonrecurring income not only from Jones's February 1992 SSI benefit payment, but also from his March and April SSI payments. Jones's timely request for reconsideration was denied.
 
 
 4
 Normally, SSI benefits are reduced by the amount of a recipient's income from other sources. 42 U.S.C. Sec. 1382(b); 20 C.F.R. Sec. 416.420. The Secretary calculates the monthly benefits based on a method known as Retrospective Monthly Accounting ("RMA"). Under the RMA system, the benefit amount for a particular month must be determined "on the basis of income and other characteristics in the first or, if the Secretary so determines, second month preceding such month." 42 U.S.C. Sec. 1382(c)(1).[2] The Secretary elected to determine a claimant's benefit payment for a particular month based on income received in the second month preceding such month. 20 C.F.R. Sec. 416.420(a). For example, income received by a claimant in April is deducted from the claimant's June payment.
 
 
 5
 Section 1382(c)(2)(A) is an exception to the RMA system. It operates prospectively rather than retrospectively. For the first month of eligibility (and the second month if the Secretary chooses), the benefit amount must be determined "on the basis of the income of the individual ... and other relevant circumstances in such month." 42 U.S.C. Sec. 1382(c)(2)(A) (emphasis added).[3] The Secretary has elected to apply Sec. 1382(c)(2)(A) to the first and second months of eligibility. 20 C.F.R. Sec. 416.420(b)(1)-(2).
 
 
 6
 The Secretary has summarized the regulation implementing RMA in the Programs Operation Manual System ("POMS").[4] POMS Sec. 02005.060 states the following: "After a period of Federal ineligibility, compute the SSI payment using the transitional computation cycle. The budget month for the first 3 months is the first month. Beginning with the third month of eligibility, the transitional cycle is complete and the standard RMA computation [which goes back two months] applies." (Emphasis added.) See also POMS Sec. 02005.65(A).
 
 
 7
 Thus, when calculating the monthly payment amount for a claimant's first three months of eligibility, by applying POMS Sec. SI 02005.060 and the standard RMA computation, income received by the claimant in Month 1 is deducted from the monthly SSI payment in Month 1, Month 2, and Month 3 (Month 1 and Month 2 are covered by Sec. 1382(c)(2)(A), Month 3 is covered by Sec. 1382(c)(1)). The problem is that in implementing Sec. 1382(c)(2)(A), the Secretary has failed to consider the nonrecurring nature of income received in the first month of eligibility as a "relevant circumstance." Consequently, the claimant's benefits are reduced three times regardless of whether he or she received any income in Months 2 or 3.
 
 
 8
 In the case of the named plaintiff Jones, rather than deducting the equivalent of $360.66, which Jones actually received from the prison in the form of cash, food, and shelter, the Secretary deducted a total of $1081.98 from the SSI benefits Jones received in his first three months of eligibility.
 
 
 9
 Jones filed a class action in the United States District Court for the Eastern District of California against the Secretary.[5] The complaint alleges that the Secretary's formula for determining monthly benefit payments in the first three months of eligibility violates the Act, 42 U.S.C. Sec. 1382(c)(2). The Secretary argues that her policies are based upon a valid interpretation of Sec. 1382(c), and that this interpretation is due great deference.
 
 III. Analysis
 A. Standard of Review
 
 10
 We review de novo a district court's grant of summary judgment. Briggs v. Sullivan Briggs II), 954 F.2d 534, 537 (9th Cir.1992). Our review is governed by the same summary judgment standard used by the trial court under Federal Rule of Civil Procedure 56(c). Darring v. Kincheloe, 783 F.2d 874, 876 (9th Cir.1986). Because the facts are not disputed, we review on purely legal grounds the judgment on cross-motions for summary judgment. Multnomah County Medical Society v. Scott, 825 F.2d 1410, 1413 (9th Cir.1987).
 
 B. Merits
 
 11
 We now address the merits of plaintiffs' claim, i.e., whether the Secretary's policy of deducting three times nonrecurring income received during the first month of eligibility violates Sec. 1382(c)(2)(A) of the Act.[6]
 
 
 12
 To determine whether the Secretary's triple-deduction of nonrecurring income violates the Act, we first "try to determine congressional intent using 'traditional tools of statutory construction.' If we can do so, then that interpretation must be given effect, and the regulations [and practices] at issue must be fully consistent with it." NLRB v. United Food & Commercial Workers Union, 484 U.S. 112, 123, 108 S.Ct. 413, 416, 98 L.Ed.2d 429 (1987) (quoting INS v. Cardoza-Fonseca, 480 U.S. 421, 446-448, 107 S.Ct. 1207, 1221-1222, 94 L.Ed.2d 434 (1987) and citing Chevron U.S.A., Inc. v. National Resource Defense Council, Inc., 467 U.S. 837, 842-43, and n. 9, 104 S.Ct. 2778, 2781-82, and n. 9, 81 L.Ed.2d 694 (1984)) "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Chevron, 467 U.S. at 842-43, 104 S.Ct. at 2781-82.
 
 
 13
 "There are two Congressional purposes at the heart of the [Act]. First is the government's apparent aim to provide a minimally decent standard of living to destitute, blind, aged and disabled individuals. Second is the government's need to prevent the dissipation of its resources through neglect, abuse, or fraud." Lyon v. Bowen, 802 F.2d 794, 797 (5th Cir.1986) cited in Martin v. Sullivan, 932 F.2d 1273, 1278 (9th Cir.1990), cert. denied, --- U.S. ----, 112 S.Ct. 648, 116 L.Ed.2d 665 (1991). The Secretary acknowledges that the first purpose is the basic purpose of the Act:
 
 
 14
 The basic purpose underlying the supplemental security income program is to assure a minimum level of income for people who are age 65 or over, or who are blind or disabled and who do not have sufficient income and resources to maintain a standard of living at the established Federal minimum income level.
 
 
 15
 20 C.F.R. Sec. 416.110.
 
 
 16
 Congress addressed both purposes when it amended the Act in 1981 to direct the Secretary to switch from a prospective accounting system to the (retrospective) RMA system to determine monthly benefit payments. Under the old, prospective accounting system, projected income, which was never actually received, resulted in underpayments of SSI benefits, and unexpected income resulted in overpayments. Under the RMA system--which is in effect for every month except the first two months of eligibility--monthly SSI payments are more accurately calculated because they are based on income actually received by the claimant. See S.Rep. No. 139 at 542, 1981 U.S.C.C.A.N. 396 at 808 ("Retrospective accounting for SSI recipients should reduce the regulatory impact on affected individuals as the committee expects the number of overpayments (and underpayments) to be reduced.").
 
 
 17
 Congress, however, retained a prospective system in the first month of eligibility. Otherwise, under the RMA system, the Secretary would look to the second month preceding the first month of eligibility to calculate the claimant's monthly benefit payment. This could result in extreme hardship for the claimant because the claimant's needs may have been met completely in the months before he or she was eligible for SSI benefits. By applying the RMA system, those resources would have been deducted from the claimant's first and second months' payments resulting in reduced benefits during those months. See S.Rep. No. 139 at 542, 1981 U.S.C.C.A.N. 396 at 808 ("The provision also calls for prospective budgeting to be used in the first month after application to prevent hardship....").
 
 
 18
 Bearing in mind Congress' intent, we look to the language of the disputed section. Section 1382(c)(2)(A) states that the Secretary "shall" determine the monthly benefit payment based on "the income ... and other relevant circumstances." (Emphasis added). Therefore, the Secretary must consider other relevant circumstances. City of Edmonds v. United States Dept. of Labor, 749 F.2d 1419, 1421 (9th Cir.1984) ("Use of the word 'shall' generally indicates a mandatory intent unless a convincing argument to the contrary is made."). Clearly, the fact that the income received by a claimant in the first month of SSI eligibility is nonrecurring is "relevant" to the determination of the claimant's benefit payments for the first three months of eligibility.[7]
 
 
 19
 Section 1382(c)(5) further supports the plaintiffs' interpretation of Sec. 1382(c)(2)(A). See K Mart Corp. v. Cartier, Inc., 486 U.S. 281, 291, 108 S.Ct. 1811, 1817, 100 L.Ed.2d 313 (1988) (citations omitted) ("In ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole."). In Sec. 1382(c)(5), Congress instructed that payments received by a claimant from one of several other aid programs "shall be taken into account in determining the amount of the benefit ... only for that month, and shall not be taken into account in determining the amount of the benefit for any other month."[8] Clearly, Congress understood the problem caused by a one-time receipt of income in the first month of eligibility. To prevent hardship on claimants who are switching from another government aid program to SSI, Congress provided that payments under the other program would only be deducted from the SSI benefit payments once. There is no indication that Congress intended this to be an exclusive list of nonrecurring payments that should be deducted once. Moreover, it would contravene the underlying purpose of the Act--to ensure a minimum subsistence level for claimants--to interpret Sec. 1382(c)(5) as giving an exclusive list of types of nonrecurring income.[9]
 
 
 20
 We find that the congressional intent underlying Sec. 1382(c)(2)(A) is clear and unambiguous. Section 1382(c)(2)(A) requires the Secretary to base its monthly payment calculation on "income ... and other relevant circumstances." The nonrecurring nature of income is relevant to an accurate calculation of a claimant's SSI benefit payments in the first three months of eligibility. To be consistent with the humanitarian purpose of the Act and ensure that claimants are able to maintain a minimum subsistence level, the Secretary must deduct nonrecurring income only once.[10]
 
 
 21
 The district court's grant of summary judgment in favor of the Secretary is reversed, and summary judgment is entered for the plaintiffs.
 
 FERNANDEZ, Circuit Judge, dissenting:
 
 22
 The majority opinion offers a method of applying the statute that cannot be called wrong. Indeed, it is more fair to aid recipients than the method used by the Secretary. However, in the face of the inherently spongy phrase, "other relevant circumstances," the majority reaches its conclusion by dubbing the statute clear and unambiguous. That result is reached by considering only one of Congress' often competing intents--providing for the needy. Practically speaking, the opinion overlooks Congress' other intentions, viz., avoiding dissipation of funds through fraud, neglect or abuse, see Martin v. Sullivan, 932 F.2d 1273, 1278 (9th Cir.1990), cert. denied, --- U.S. ----, 112 S.Ct. 648, 116 L.Ed.2d 665 (1991); and simplification of administration, see Farley v. Sullivan, 983 F.2d 405, 409-10 (2d Cir.1993). It also brushes aside the fact that Congress has designated specific payments that are to be deducted only once. In short, the majority opinion elides the compromises which pervade the legislation and make it somewhat indeterminate. Those kinds of compromises allow legislation to get enacted. They also put off resolution of some difficult issues to another place, another day.
 
 
 23
 In this instance, that place is the Secretary, and that day came when the Secretary acted. Again, the majority's construction is reasonable, but so is the Secretary's. That, to my mind, is the end of it. The Secretary's interpretation must be upheld. See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-45, 104 S.Ct. 2778, 2781-83, 81 L.Ed.2d 694 (1984); Washington State Dep't of Game v. I.C.C., 829 F.2d 877, 879 (9th Cir.1987). That, of course, means that we should agree with the Second Circuit, see Farley, 983 F.2d at 410, and that the district court should be affirmed.
 
 
 24
 Therefore, I respectfully dissent.
 
 
 
 *
 Pursuant to Fed.R.App.P. 43(c)(1), Donna W. Shalala, M.D., who succeeded Louis W. Sullivan as Secretary of Health and Human Services, is substituted as defendant-appellant in this case
 
 
 **
 Honorable Thomas M. Reavley, United States Circuit Judge, United States Court of Appeals for the Fifth Circuit, sitting by designation
 
 
 [1]
 On appeal, plaintiffs also challenge the district court's class definition based on findings under 42 U.S.C. Sec. 405(g) and its ruling under 28 U.S.C. Sec. 1361 regarding mandamus jurisdiction. We affirm the district court on these issues based on established Ninth Circuit precedent in a separate, unpublished memorandum disposition
 
 
 [2]
 Section 1382(c)(1) provides:
 An individual's eligibility for a benefit under this subchapter for a month shall be determined on the basis of the individual's (and eligible spouse's, if any) income, resources, and other relevant characteristics in such month, and except as provided in paragraphs (2), (3), (4), and (5) the amount of such benefit shall be determined for such month on the basis of income and other characteristics in the first or, if the Secretary so determines, second month preceding such month. Eligibility for and the amount of such benefits shall be redetermined at such time or times as may be provided by the Secretary.
 
 
 [3]
 Section 1382(c)(2) provides in part:
 The amount of such benefit for the month in which an application for benefits becomes effective (or, if the Secretary so determines, for such month and the following month) and for any month immediately following a month of ineligibility for such benefits (or, if the Secretary so determines, for such month and the following month) shall--(A) be determined on the basis of the income of the individual and the eligible spouse, if any, of such individual and other relevant circumstances in such month....
 (Emphasis added.) Part (B) of Sec. 1382(c)(2) addresses prorating SSI benefits if eligibility begins after the first day of the month.
 
 
 [4]
 The Programs Operation Manual System, formerly called the "Claims Manual," is "the Social Security Administration's 'authorized means for issuing written program instructions for adjudicating claims and performing its mission.' " Briggs v. Sullivan (Briggs I), 886 F.2d 1132, 1135 (9th Cir.1989) (quoting the Secretary's predecessor)
 
 
 [5]
 Jones included the Commissioner of the Social Security Administration as a defendant. We refer to both defendants here as the "Secretary."
 
 
 [6]
 We have not considered this issue before, but the Second Circuit addressed it in Farley v. Sullivan, 983 F.2d 405 (2d Cir.1993). There, the court concluded that the Secretary's policy of counting nonrecurring income three times was consistent with the other sections of Sec. 1382(c) and with the legislative purpose of the RMA system. We do not agree with the Second Circuit's conclusions for the reasons set forth in this opinion
 
 
 [7]
 The Secretary contends that the plain language of the statute requires her to consider only relevant circumstances that relate to matters "other" than income. This argument is without merit. "Other relevant circumstances" may encompass any type of relevant circumstance, whether it is about income or something unrelated to income
 
 
 [8]
 Section 1382(c)(5) states:
 Notwithstanding paragraphs (1) and (2), any income which is paid to or on behalf of an individual in any month pursuant to (A) a State plan approved under part A of subchapter IV of this chapter (relating to aid to families with dependent children), (B) section 672 of this title (relating to foster care assistance), (C) section 1522(e) of Title 8 (relating to assistance for refugees), (D) section 501(a) of Public-Law 94-422 (relating to assistance for Cuban and Haitian entrants), or (E) section 13 of Title 25 (relating to assistance furnished by the Bureau of Indian Affairs), shall be taken into account in determining the amount of the benefit under this subchapter of such individual (and his eligible spouse, if any) only for that month, and shall not be taken into account in determining the amount of the benefit for any other month.
 (Emphasis added.)
 
 
 [9]
 Our interpretation does not contradict the other purpose of the Act, to prevent payments through neglect, abuse, or fraud. Our interpretation would prevent underpayment, not cause overpayments
 In addition, we believe our interpretation of Sec. 1382(c)(2)(A) in light of Sec. 1382(c)(5) is more consistent with the overall intent of the Act and the RMA system than the Second Circuit's interpretation in Farley, 983 F.2d at 409.
 
 
 [10]
 Because Congress' intent is clear, we need not examine the Secretary's interpretation under the "arbitrary and capricious" standard. Cf. Briggs II, 954 F.2d at 538 ("When confronted with congressional silence, ..." we examine the agency's interpretation and give it controlling weight unless it is " 'arbitrary, capricious, or manifestly contrary to the statute.' ") (quoting Chevron, 467 U.S. at 844, 104 S.Ct. at 2782)